Bailey v. Winn.

## BAILEY v. WINN et al., Appellants.

### Division One, December 22, 1892.

1. **Court:** INFERIOR TRIBUNAL: MACON COUNTY COURT OF COMMON PLEAS. The Macon county court of common pleas, as established by the act of the legislature of March 2, 1874 (Acts, p. 256), is an inferior tribunal to the circuit court.

2. ———: ———. The test of the inferiority of a court to the circuit court is that the former is either placed under the appellate or supervisory control of the circuit court, or that its jurisdiction is limited.

3. **Jurisdiction:** VENDOR'S LIEN: TITLE TO REAL ESTATE. An action to enforce a vendor's lien does not involve the title to real estate within the meaning of the act creating the Macon court of common pleas (Acts 1874, p. 256) giving it jurisdiction in all civil actions "except where the title to real estate shall be involved."

4. ———: JUDGMENT: EXECUTION. A court having the power to render a judgment has the right to issue execution thereon, unless the statute directs otherwise.

5. ———: ———: ———: MACON COUNTY COURT OF COMMON PLEAS. The Macon court of common pleas was authorized, under the act creating it (Acts 1874, p. 256), to issue executions on its judgments.

6. **Purchaser Pendente Lite.** A purchaser of land pending litigation takes subject to the result of the suit.

*Appeal from Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*Dysart & Mitchell* for appellants.

(1) The court of common pleas at New Cambria had no legal existence, and its judgments and proceedings thereunder were utterly void, unless it can be construed to be a court inferior to the circuit court. Session Acts, 1874, page 256; Constitution of 1865, art. 6, secs. 1, 13; *State v. Daniels*, 66 Mo. 192; *State ex rel. v. County Court*, 50 Mo. 317; 1 Bouvier's Law Dictionary [14 Ed.] 769. The court of common pleas was made co-ordinate with the circuit court in all respects and is not an inferior court. (2) It affirmatively appears in this record that no transcript or abstract of the judgment was filed in the circuit court; there is no authority in the act of 1874 for an execution to issue until after the filing of the transcript in the circuit court. (3) The land in question was sold by Sparrow to Souther between the date of the judgment and suing out of the writ of error. A writ of possession or of restitution could not issue against Souther, even if the judgment had been rendered and entered for plaintiff in this court on the writ of error. The writ of error was the commencement of a new suit. *Maclin v. Allenberg*, 100 Mo. 337; *Pierce v. Stinde*, 11 Mo. App. 364; *McCormick v. McClure*, 6 Blackf. 466; *Taylor v. Boyd*, 3 Ohio, 338; see also authorities cited in *Maclin v. Allenberg*, and *Pierce v. Stinde, supra.* (4) That Souther was an innocent purchaser is not called in question by this record. He purchased on the faith of his vendor's decree.

*Ben Eli Guthrie* and *J. L. Berry* for respondents.

(1) The Act of March, 1874, creating the court of common pleas was constitutional.. A court of limited jurisdiction is inferior to a court of general jurisdiction. *State v. Daniels,* 66 Mo. 192; 1 Bouvier's Law Dictionary [14 Ed.] p. 769. (2) The title to real estate was not involved in the case of *Edwards v. Edwards* in the court of common pleas. The title can only be said to be involved when it is the subject-matter of litigation and not such as only affects or involves some interest in real property. *Robertson v. Railroad,* 18 Mo. App. 185; *Morse v. Franklin,* 79 Mo. 518; *Baier v. Berbcrich,* 77 Mo. 413. (3) The execution properly issued from the court of common pleas. *Bailey v. Winn,* 101 Mo. 649. (4) The wards of Sparrow stand in the shoes of their deceased father. They do not occupy the position of innocent purchaser without notice. Their mother had no interest in the land to convey and they took nothing by her deed. *Waller v. Mardus,* 29 Mo. 25; *Warsham v. Callison,* 49 Mo. 206; *Bailey v. Winn,* 101 Mo. 649. The judgment should be affirmed. *Bailey v. Winn,* 101 Mo. *supra.*

BLACK, J. — This is an action of ejectment to recover one hundred and twenty acres of land in Macon county, the same being part of school section 16. There was a judgment for the defendants on the first trial, which was reversed and the cause remanded by this court on a writ of error sued out by the plaintiff. 101 Mo. 649. The second trial resulted in a judgment for the plaintiff, and to reverse that judgment the defendants perfected the present appeal. The case, when here before, was complicated by reason of a number of titles put in evidence by the plaintiff. The present contest turns

upon the validity of one of these titles, and the facts will be stated so far only as they bear upon this issue.

The three forty-acre tracts, constituting the one hundred and twenty acres in the suit, were sold by the county court under the law relating to school lands, and the purchasers paid the purchase price, but they did not obtain patents from the state. This equitable title thus acquired was vested in one Andrew Agee by various mesne conveyances. Agee conveyed the land to Edward Edwards by a deed dated the eighteenth of June, 1870. Edward Edwards died in possession of the land in 1877, leaving a widow and two minor children. The widow married in 1879, and she and her husband conveyed her interest, whatever it was, to the two minor children by a deed dated the third of April, 1880. These minor heirs defend this suit by their curator, James D. Sparrow.

The plaintiff put in evidence a patent from the state to Edward A. Edwards for the land, dated the twenty-fifth of June 1884, and a deed from him to plaintiff Bailey. We held, when the case was here before, that Edward A. Edwards acquired this legal title subject to whatever equitable rights, if any, Edward Edwards had in the land, and that the plaintiff occupied the same position. The question now is, whether Edward A. Edwards acquired the equitable title of Edward Edwards, or whether that title rests in the minor heirs of Edward Edwards. To show that Edward A. Edwards acquired this equitable title, the plaintiff put in evidence a sheriff's deed to Edward A. Edwards, dated the fifteenth of July, 1875, based upon a sale made under a judgment of the Macon county court of common pleas, in favor of David W. Edwards and against Edward Edwards.

The judgment was rendered on the twenty-eighth of April, 1875, and the execution issued out of the common pleas court.

1. A number of objections are made by the defendants to the sheriff's deed, and the first is that the act of March 2, 1874 (Acts of 1874, p. 256), creating the Macon county court of common pleas is unconstitutional and void, because the common pleas court thus established is not an "inferior tribunal" to the circuit court.

Section 1 of article 6 of the constitution of 1865, as amended in 1870, declares: "The judicial power, as to matters of law and equity, shall be vested in a supreme court, in circuit courts, and in such inferior tribunals as the general assembly may, from time to time, establish."

The distinction between superior and inferior courts is not clearly defined. When different courts are compared, it is generally said those courts are inferior "which are subordinate to other courts; also, those of a very limited jurisdiction." Bouvier's Law Dictionary, Title, Courts; 4 American & English Encyclopedia of Law, 453. The test ( 'nferiority may be solved by showing that the coun ' either placed under the supervisory or appellate c 'rol of other courts, or that the jurisdiction as to the 'bsequent matter is limited and confined. *State v. Da* 's, 66 Mo. 201. Applying these tests there can be nʋ doubt but this common pleas court is a tribunal inferior to the circuit court. It has no jurisdiction in criminal matters, nor in those civil actions in which the title to real estate is involved. Again, it is subject to the superintending control of the circuit court, not by way of appeal, but by the writs of prohibition and *mandamus*.

The act creating this court provides that appeals

and writs of error may be allowed and prosecuted to the supreme court. But want of appellate jurisdiction in the circuit court is not the sole test. The fact that this court is far more limited in its jurisdiction as to subject-matter than the circuit court is sufficient to make it a tribunal inferior to the circuit court within the meaning of the constitution. *State v. Daniels, supra,* is quite conclusive on this question.

2. The next objection to the sheriff's deed is that it is void because the suit of David W. Edwards against Edward Edwards involved title to real estate, and for this reason the common pleas court had no jurisdiction of that action.

When this case was here before we held that the suit in the common pleas court was simply one to enforce a vendor's lien, and that title to real estate was not involved in it. The pleadings in that case were not then before us; but they were put in evidence on the last trial, and it is now insisted that they disclose different issues from those before considered. The case as disclosed by the findings of the common pleas court and the admissions made by the pleadings is in substance this:

David W. Edwards, the plaintiff in that case, and Edward Edwards, the defendant therein, purchased the land in 1870 from Andrew Agee at the price of $1,600. David paid $400 and Edward paid $600. David executed his note to Agee, due in one year, for $600, being the balance of the purchase price, and received from Agee a bond for a deed. In 1871 David directed Agee to convey the property to Edward on payment of the $600 note. Edward paid this note and received from Agee a deed, and then gave David his note for $400 for David's interest in the land. The court found that there was due from Edward to David on the $400 note the

sum of $498.50, and gave judgment in favor of David. enforcing a vendor's lien for that amount, subject to a certain deed of trust placed on the land by Edward.

Turning now to the issues made by the pleadings, we find Edward states in his answer that he and David were the joint purchasers of the land, and were the joint makers of the $600 note payable to Agee; that David failed to pay his share of the note and Edward paid the whole of it, in consideration that David abandon all claims to the land and would release to him, Edward. Edward in his answer also denies that he executed the $400 note sued upon, and says it was a forgery. David by his reply admits title in Edward by virtue of the deed to him from Agee.

The only real issues in the case were whether Edward executed the $400 note, and, if he did, then whether it was given to David for his interest in the land. The case stands now just as it did before. There was no contest as to who had or should have the title. The suit was simply one to foreclose a vendor's lien and nothing more. The act creating the common pleas court gives to it concurrent original jurisdiction in civil actions with the circuit court, "except where the title to real estate shall be involved." As the case was one to enforce a vendor's lien and nothing more, it did not fall within the exception. *Baier v. Berberich*, 77 Mo. 414; *Syenite Granite Co. v. Bobb*, 97 Mo. 46; *Bailey v. Winn*, 101 Mo. 658.

It stands admitted by the present record that no transcript of the judgment of the common pleas court was ever filed in the office of the clerk of the circuit court; and the final objection to the sheriff's deed is that an execution could not issue on that judgment until such transcript had been filed; and coupled with this objection is the further one, that the execution

should have been issued out of the office of the clerk of the circuit court and not out of the common pleas court.

To an understanding of these objections we here set out the third and eighth sections of the act creating the common pleas court:

" Section 3. The judgment of said court shall be a lien upon real estate, and in all respects have the same force and effect of judgment of he circuit court, after a transcript of such judgment shall be filed in the circuit clerk's office, and issuing of executions thereon, and sales of real and personal estate shall be governed by the same laws that govern such matters in the circuit court: *Provided, further*, that transcripts of proceedings in justices's court arising west of Chariton river, in said county, may be filed in said court, and in all respects be governed by the same laws that provide for the filing of such instruments in the circuit court: *Provided, further*, that it shall be the duty of the judge of said court to file in the office of the clerk of the circuit court a certificate of all judgments rendered and transcripts filed in said court within six days after the rendition or filing thereof, setting forth briefly the names of the plaintiff and defendant, and the amount and date of judgment."

"Section 8. Where real estate shall be levied on by virtue of an execution issued upon any judgment or decree of said court hereby established, said real estate shall be sold during some term of said court; and said sale shall be conducted in all respects as sales under executions issued from the circuit court with like effect."

An execution is the "fruit and life of every suit." The right of a court of law to issue executions is an incident to the power to render judgments, and it must

be assumed that a court has the power to enforce its own judgments by execution, unless that power is withheld by statute in clear terms.   Freeman on Executions [2 Ed.] sec. 10.   It is also to be assumed that the execution must be issued out of the court rendering the judgment, unless the statute directs to the contrary.   Now the first part of section 3 provides for filing transcripts of the common pleas court judgments in the office of the circuit court, but it does not follow from this that executions must be issued on such transcripts by the clerk of the circuit court.   There is nothing in this section that indicates any purpose to deprive the common pleas court of the right to issue executions, unless we construe the words, "and issuing executions thereon," to mean that executions must be issued on the transcripts and not on the judgments. On the former hearing we found difficulty in giving to the words just quoted any meaning at all.   If we regard the punctuation they have no connection and perform no function in the structure of the sentence. If we disregard and strike out the semicolon following them, then they have a meaning and there is no difficulty in understanding the law.   By disregarding the semicolon, the clause provides that issuing of executions and sales of real and personal property shall be governed by the law governing such matters in the circuit court.   This leaves the common pleas court with full power to issue executions.   This construction is supported by other portions of the same section; for the first proviso contemplates that the common pleas court may issue executions on transcripts of justices' judgments filed therein.   Again, section 8 provides that sales of real estate shall be made during some term of the common pleas court; and these sales are to be conducted in all respects "as sales under executions issued from the circuit court;" that is to say, the sales

are to be conducted in the manner that sales are con-
ducted on circuit court executions. From all this it is
clear that the execution in question was properly issued
from the common pleas court.

Nor is this sale void because no transcript was filed
with the clerk of the circuit court. The transcript men-
tioned in the first part of section 3 is evidently the
same thing as the certificate mentioned in the latter
part of the same section. This common pleas court,
as we said when the case was here before, held its
terms at a place other than the county seat; and the
act makes it the duty of the judge to file the certifi-
cates of judgments rendered by his court with the
clerk of the circuit court so as to give notice of the
existence of such judgments. A like provision is
found in many of the acts creating common pleas and
other inferior courts. It may be conceded that the
certificate should have been filed before issuing the
execution, still that does not make the sale void. The
failure to file the certificate was, at most, only an irreg-
ularity, and does not affect the validity of the sale. No
question as to the rights of third persons is involved in
this case.

The various objections to the sheriff's deed are
all overruled, and it follows that Edward A. Edwards
acquired the equitable title of Edward Edwards, so that
the present plaintiff has both the equitable and legal
title.

4. After the former judgment in this case had
been reversed, the defendant Sparrow filed a supple-
mental answer. The facts set up in this pleading
and admitted by the present record are these: This
suit was commenced in 1884; a judgment was rendered
in favor of the defendants at the January term, 1885,
of the circuit court. The motion for new trial was
overruled at the September term, 1885, at which time

leave was given plaintiff to file bill of exceptions on or before the first day of the January term, 1886, and the bill was filed on the fourth day of January, 1886, it being the first day of the term. The writ of error was not sued out until the twenty-fourth of January, 1887, and notice of suing out the same was served March 7, 1887. The defendant Sparrow as curator conveyed the land to John M. Souther by deed dated the ninth of November, 1885. Souther is not a defendant in this case, but Sparrow sets up these facts to show title out of plaintiff.

Souther purchased the land and received his deed before the time had expired for filing the bill of exceptions, and we think the suit must be regarded as pending until that time expired. He was, therefore, a purchaser pending the litigation, and took his deed subject to the result of the suit. It is true that suing out a writ of error is for some purposes considered the commencement of a new action. *Macklin v. Allenberg*, 100 Mo. 337; but Sparrow and his grantee Souther are in no condition to invoke the rule, for Souther purchased the land while the suit was pending. Whether that judgment would bar another suit, even if not reversed, depends upon considerations not discussed in the briefs. For all present purposes we assume it would have been a bar to another suit on the titles then litigated. The judgment is affirmed. All concur.