Argued at Pendleton October 25, affirmed December 7, 1920.

# COLE v. MARVIN.

(193 Pac. 828.)

**Dower—Statute, Attempting to Confer Exclusive Jurisdiction on County Court for Admeasurement of Dower Irrespective of Dispute, Ineffective.**

1. Despite Article VII, Section 12, of the Constitution, as amended in 1910, giving the County Court the jurisdiction pertaining to probate courts, Oregon Laws, Section 936, subdivision 8, in so far as attempting to confer exclusive jurisdiction on the County Court in all cases of admeasurement of dower, irrespective of any dispute as to the widow's right, is ineffective for such purpose, and a County Court in which a widow sought admeasurement of her dower erred in proceeding with the admeasurement after it appeared from the answer of the heirs that a dispute existed as to her right, and that the answer presented a question of fact.

**Courts—"Inferior Courts" Defined, and Held Proceedings must Show Jurisdiction.**

2. Used in a narrow and technical sense, the words "inferior courts" mean courts of a special and limited jurisdiction, which are created on such principles that their judgments taken alone are entirely disregarded, and the proceedings must show their jurisdiction.

**Certiorari—Writ of Review Lies from Circuit Court to County Court Which Entertained Widow's Contested Proceeding for Admeasurement of Dower—"Inferior Court."**

3. Any court, as the County Court, subject to the appellate jurisdiction and supervisory control of the Circuit Court under Article VII, Section 9, of the Constitution, is an "inferior court," within the meaning of the statutes, authorizing writ of review from the Circuit to the County Court, so that writ of review from the Circuit Court will lie to review the action of the County Court in entertaining a widow's proceeding, contested by heirs, for admeasurement of dower.

**Courts—Holding That County Court is "Court of General and Superior Jurisdiction" Means Record Imports Verity.**

4. The holding that in probate matters the County Court is a "court of general and superior jurisdiction" simply means that its record imports absolute verity, and cannot be collaterally attacked.

**Judgment—Proceeding by Writ of Review is a Direct Attack on Decree.**

5. A proceeding by a writ of review is a direct, and not a collateral, attack upon the decree sought to be reviewed.

From Wallowa: JOHN W. KNOWLES, Judge.

On what is direct as distinguished from collateral attack on judgment, see note in Ann. Cas. 1914B, 82.

In Banc.

This is an appeal from an order of the Circuit Court dismissing a proceeding for admeasurement of dower begun in the County Court of Wallowa County by defendant Julia A. Estes. Mrs. Estes instituted a proceeding in the County Court for the admeasurement of her dower in the land of her deceased husband. Among other matters, it was alleged, in conformity to Section 10,060, Or. L., (Section 7293, L. O. L.), that the petitioner's right to dower is not disputed by the heirs or devisees, or anyone claiming under them. Certain heirs of the deceased, plaintiffs in this court, appeared in the proceeding and answered, denying the claimant's right to dower, alleging that she had theretofore elected to receive certain provisions of the will of deceased in lieu of dower, had so notified the executor, and had accepted an installment of such provision. The County Court proceeded to hear and determine the case and to admeasure the dower. From its decision the plaintiffs brought this writ. The sole contention here is that by virtue of Section 10,060, Or. L., the County Court had no jurisdiction to admeasure dower where that right was disputed.          AFFIRMED.

For appellants there was a brief over the names of *Mr. Thomas M. Dill* and *Mr. A. Fairchild*, with an oral argument by *Mr. Dill*.

For respondents there was a brief and an oral argument by *Mr. J. A. Burleigh*.

McBRIDE, C. J.—1. It hardly requires argument to sustain the proposition that if section 10,060, Or. L., is still effective and unrepealed, the County Court

had no jurisdiction to decree the admeasurement of dower in the face of a dispute by the heirs as to the claimant's rights in the premises. This branch of the case depends upon the question of the repeal of that section. The law was originally enacted in 1854, and at the time our Constitution was adopted it was the only authority given to County Courts to admeasure dower; disputed cases being left by implication to the equity courts.

Under our original Constitution, the County Court was recognized as a court of record, having general jurisdiction to be "defined, limited and regulated by law," and by Section 12 of Article VII it was given, among other prerogatives, "the jurisdiction pertaining to probate courts." The changes that have been wrought by the amendment to Article VII adopted in 1910 need not be considered here. What is meant by "the jurisdiction pertaining to probate courts" is to be determined in a great measure by the authority exercised by such courts when the Constitution was adopted. At common law it became the duty of the heir immediately to assign or admeasure to the widow her dower in the lands of her deceased husband. If this was fairly done, the matter was ended: Scribner on Dower, Chapter 4, § 1. If the heir refused or made an unfair assignment, her remedy was in the common-law courts by "writ of right of dower": *Id.*, Chapter 5, §§ 1, 2. When there appeared some legal impediment to proceeding at law, the courts of equity assumed jurisdiction, and in most of the United States, where the right of assignment of dower was not provided for by statute, the usual remedy was in equity. It would appear that when the Constitution was adopted there was, if any, only a limited right in the probate courts to

98 Or.—12

admeasure dower, namely, when there was no dispute with the heirs or others interested, and the constitutional authority of the County Courts sitting in probate extended no further than to such cases.

It seems hardly probable that it was the intention of the framers of the Constitution to vest in judges unlearned in the law, as most of the county judges then were and many now are, jurisdiction to decide complicated disputes in relation to dower, which frequently involve many thousands of dollars, and especially in view of the fact that Section 12 expressly limits the civil jurisdiction of the County Courts to matters "not exceeding the amount of value of $500." While this limitation does not in terms or meaning apply to probate proceedings, it indicates the caution with which the framers of the Constitution viewed any large grant of authority to a tribunal whose judge was usually someone unskilled in the law. Taken as a whole, we are of the opinion that the grant of jurisdiction in probate matters did not extend that authority to disputed cases of dower, and did not authorize the legislature so to extend it; such matters not being at the time of the adoption of the Constitution within the existing probate jurisdiction. In *Stevens* v. *Myers,* 62 Or. 372 (121 Pac. 434, 126 Pac. 29), at page 408 of the state report, we held that it was not the intent of the framers of the Constitution to include the probate of wills in the term "civil cases," and we are of the opinion that by Section 12 of Article VII, the framers thereof intended to confine the authority of the County Courts in probate matters to those existing at common law, and perhaps such other matters as had at that time been grafted on to the probate system by statute. What is said in that opinion about the

effect of Section 936, L. O. L. (Section 936, Or. L.), upon the pre-existing statutes must be considered with reference to the subject matter then under discussion, namely, the probate of wills, in which the probate courts and County Courts succeeding them have always had unlimited and exclusive original jurisdiction in the first instance; and this, as already shown, is not the case in the matter of admeasurement of dower. It would follow logically from this reasoning that Section 936, Or. L., subdivision 8, in so far as it attempts to confer exclusive jurisdiction upon the County Court in all cases of admeasurement of dower, irrespective of any dispute as to rights, is ineffective for that purpose. And this court by another line of reasoning has practically arrived at that result: *Baer* v. *Ballingall,* 37 Or. 416 (61 Pac. 852). This decision is followed in *Browne* v. *Coleman,* 62 Or. 454 (125 Pac. 278).

We are of the opinion that the County Court erred in proceeding with the admeasurement after it appeared from the answer of the heirs that a dispute existed as to the right of Mrs. Estes to dower and the answer presented a question of fact to be tried, before a decision could be arrived at. The heirs presented the question in the only way that it could be raised. If they had failed to appear, it would have been taken *pro confesso* that the statement in the petition that there was no objection by them to the admeasurement was true, and they would have been barred from contesting the proceedings thereafter. Their answer, disputing the petitioner's right to dower, was in effect a self-proving plea to the jurisdiction, where it showed upon its face facts which, if established, would have defeated Mrs. Estes' claim to dower.

2. Another important question is as to the remedy in cases where the County Court has exceeded its jurisdiction. It is claimed by the petitioner that the County Court sitting in probate is a court of general and superior jurisdiction, deriving its authority from the Constitution, and that its decisions can be brought into this court by appeal only. The contention of appellant may be syllogistically stated about as follows:

"(1) The County Court sitting in probate is a court of general and superior jurisdiction. (2) A writ of review lies only to the proceedings of inferior courts; *ergo,* such writ does not lie to review the proceedings of the County Court."

The weakness of this syllogism lies in confusing the definition of the term "inferior[3]" as applied to this subject matter. Used in a narrow and technical sense, the words "inferior courts" mean courts of a special and limited jurisdiction, which are created on such principles that their judgments, taken alone, are entirely disregarded, and the proceedings must show their jurisdiction: Words & Phrases, title "Inferior Courts," citing *Ex parte Cuddy,* 131 U. S. 280 (33 L. Ed. 154, 9 Sup. Ct. Rep. 703); *Nngent* v. *State,* 18 Ala. 521; *Grignon* v. *Astor,* 2 How. (43 U. S. 319 (11 L. Ed. 283, see, also, Rose's U. S. Notes), and other cases. But such is not the sense in which the word is used in our Constitution, where by necessary implication, if not by express language, the County Court for the purpose of the exercise of the supervisory control granted to the Circuit Courts is relegated to the class of inferior courts.

Section 9 of Article VII of our Constitution is as follows:

"All judicial power, authority, and jurisdiction not vested by this constitution or by laws consistent therewith, exclusively in some other court, shall belong to the Circuit Courts; and they shall have appellate jurisdiction and supervisory control over the County Courts, and all *other* inferior courts, officers, and tribunals."

We italicize the word "other" because of its importance in determining what was in the mind of the framers of the Constitution as to the rank of the County Court for the purposes of the exercise of that supervisory control granted to the Circuit Courts. If one should say, "I have consulted A. and other lawyers," we at once infer that A. is a lawyer. If a newspaper should say, "Smith and other thieves are in the city," the implication that it had classed Smith as a thief would be strong enough to justify an action by him for libel.

The contention of the petitioner is fully answered and negatived by the decision of this court in *Kirkwood* v. *Washington County,* 32 Or. 568 (52 Pac. 568), in which Mr. Justice R. S. BEAN, speaking for the court says:

"In a technical sense, an inferior court is one of inferior or limited jurisdiction, whose judgment, standing alone, does not import verity; but, in a more general sense, any court from which an appeal or writ of review will lie is inferior to the court to which its judgments may be carried for review; and it is in this sense the term is evidently used in the statute. As so used, it refers to relative rank and authority, and not to inherent quality, and was intended to include all courts and tribunals over which the Circuit Courts are given appellate jurisdiction and supervisory control by the Constitution (Article VII, Section 9): *Swift* v. *Circuit Judges,* 64 Mich. 479 (31 N. W. 434); *State* v. *Daniels,* 66 Mo. 192; *Nugent* v. *State,* 18 Ala. 521; 4 Enc. Pl. & Prac. 38. The mo-

tion to dismiss the writ for want of jurisdiction was therefore properly overruled, and this brings us to the validity of the proceeding sought to be reviewed."

It is true that in *Stadleman* v. *Miner,* 83 Or. 349, 391, 392 (155 Pac. 708, 163 Pac. 585, 983), Mr. Justice MOORE expressed a doubt as to the soundness of the opinion in *Kirkwood* v. *Washington County,* 32 Or. 568 (52 Pac. 568), but his remarks there are pure *dictum,* the question of the right to review proceedings of the County Court in probate matters being not even remotely involved. A careful re-examination of the decision in the Kirkwood case and the examination of authorities in addition to those there cited satisfies us with the correctness of Mr. Justice BEAN's opinion: *Mitchell* v. *Bay, Probate Judge,* 155 Mich. 550 (119 N. W. 916); *Ex parte Roundtree,* 51 Ala. 42; *Sanders* v. *State,* 55 Ala. 42; *Bailey* v. *Winn,* 113 Mo. 155 (20 S. W. 21).

3-5. In the light of the authorities we hold that any court subject to the "appellate jurisdiction and supervisory control" of the Circuit Court is an inferior court, within the meaning of the statutes authorizing the writ of review, and that since the County Court is in this class the writ of review will lie. This holding does not conflict with those decisions holding that in probate matters it is a court of general and superior jurisdiction, which simply means that its record imports absolute verity and cannot be attacked collaterally. We are imputing absolute verity to the record of the court here and receiving it at its full value. We find therefrom, and not collaterally or outside of it, that such record shows that the court was without jurisdiction to proceed to the admeasurement of dower in the face of a dispute of record as to the widow's right thereto. A proceeding by

writ of review is a direct and not a collateral attack upon the decree sought to be reviewed: *Title Abstract Co.* v. *Nasburg,* 58 Or. 190 (113 Pac. 2).

Finding no error, the decree of the Circuit Court is affirmed.                                              AFFIRMED.