Submitted on remand from the Oregon Supreme Court September 11,
affirmed October 8, 1979, reconsideration allowed,
former opinion withdrawn, reversed (44 Or App 261,
605 P2d 749) January 28, 1980

BROOD,
*Petitioner,*
*v.*
DAVIS,
*Respondent.*
(No. TC 77-2486-E-1,
CA 10201, SC 25918)

601 P2d 487

Dwayne Brood, Medford, filed the briefs in propria persona for petitioner.

E. R. Bashaw, Medford, filed the brief for respondent.

GILLETTE, J.

## GILLETTE, J.

This is an appeal from a writ of review proceeding brought in circuit court to review the action of a district court judge. We affirm.

The case was before us previously. At that time, relying on our opinion in *Hoffman v. French,* 36 Or App 739, 585 P2d 730 (1978), we dismissed the appeal on the ground that, subsequent to the enactment of Oregon Laws 1975, ch 611 (making district courts a court of record), a writ of review would no longer lie in circuit court to review the actions of a district court. *Brood v. Davis,* 36 Or App 641, 585 P2d 772 (1978). The Supreme Court granted review in both this case and *Hoffman v. French,* reversed the holding in *Hoffman v. French,*[1] and reversed and remanded the present case to us for consideration on the merits. *Brood v. Davis,* 287 Or 331, 599 P2d 455 (1979).

Petitioner Brood was the defendant in a district court proceeding commenced on August 29, 1977, by United Finance (UF). After some preliminary maneuvering, Brood filed his answer and counterclaim on September 14, 1977. The counterclaim sought $101,000 damages for alleged "abuse of judicial process" by UF. On the same day, Brood filed a motion to remove the case to circuit court pursuant to ORS 46.070-46.075.[2]

---

[1] *Hoffman v. French,* 287 Or 323, 599 P2d 452 (1979).

[2] ORS 46.070 provides:

"In all actions instituted in a district court a defendant shall have the right to plead a counterclaim in excess of the jurisdiction of the court. If a defendant has pleaded a counterclaim in excess of the jurisdiction of the district court, the court shall strike the counterclaim and proceed to try the cause as though it had never been filed, unless the defendant files with his counterclaim a motion requesting the cause to be transferred to the circuit court accompanied by the tender of the costs of such transfer. In any action instituted in a district court wherein the amount claimed by the plaintiff is not in excess of its jurisdiction, the district court shall have jurisdiction of such cause notwithstanding the combined amounts of such claim and counterclaim exceed the sum of $3,000."

United Finance moved to strike Brood's counter-claim on the ground it was sham and frivolous. On September 23, 1977, after a hearing, the district court judge granted UF's motion, struck the counterclaim and denied Brood's motion to transfer proceeding to circuit court. On the same day and for reasons not pertinent to this appeal, Brood's answer was stricken, he was found to be in default and judgment was entered against him. So far as the record discloses, Brood took no appeal to this court from that judgment, and it is now final. Instead, Brood filed the present writ of review proceedings on October 6, 1977, against the district court judge.[3]

After some further proceedings the circuit court on December 14, 1977, entered a memorandum opinion dismissing the writ on the ground that no cause of action was or could be stated in Brood's district court counterclaim, that the counterclaim was therefore correctly stricken and the district court continued to have jurisdiction of the case.

---

ORS 46.075 provides:

"(1) The district court shall order the transfer to the circuit court of every cause authorized by this chapter to be so transferred. Within 10 days therefrom the clerk of the district court shall file with the clerk of the circuit court a transcript of the cause including all the material entries in the docket of the district court and all of the original papers relating to the case. Thereupon the district court shall proceed no further with the cause. The case shall be considered transferred to the circuit court which shall then have jurisdiction to try and determine the cause.

"(2) The responding party shall have 10 days after the final date allowed for the transcript to be filed in the circuit court within which to plead further. If the district clerk fails to file a transcript within the time specified, a judge of the circuit court may order him to do so within a specified time.

"(3) If the moving party prevails in the circuit court, the costs of transfer borne by him may be taxed as costs."

[3] United Finance sought permission to intervene in the writ of review proceeding as an additional defendant. Permission was denied. Thereafter, both before the circuit court and this court, counsel for UF represented the respondent district court judge.

Petitioner first assigns as error the circuit court's affirmance of the district court's refusal to transfer the proceeding to circuit court pursuant to ORS 46.070-46.075.[4] The circuit court affirmed the district court because it concluded petitioner here could not state a valid cause of action in his counterclaim. We borrow extensively from the circuit court's memorandum analyzing the question.

As noted, the petitioner was defendant in a case filed in the district court by UF. Brood filed an answer denying the allegations of the complaint and making a counterclaim in which he alleged that UF knew that he was an auctioneer and maliciously filed the replevin action with full knowledge that he was not in possession of any merchandise owned by it. In the *ad damnum* clause of the counterclaim Brood requested the sum of $1,000 special damages, $50,000 general damages and $50,000 punitive damages. He then complied with all of the requirements of the law to have his case transferred from the district court to the circuit court but, instead of transferring the case, the district judge granted an order striking the counterclaim, denied defendant's motion to transfer the case and refused his tender of costs.

The circuit court held two hearings on this matter, the second of which was to determine whether *any* cause of action may be stated consistent with the facts alleged in the counterclaim. If no cause of action may be thus stated then the filing of the counterclaim did not oust the district court of jurisdiction. *See Draper v. Mullennex,* 225 Or 267, 357 P2d 519 (1960); 21 CJS, § 691, Courts. In *Salitan v. Dashney,* 219 Or 553, 347 P2d 974 (1959), and in *Draper v. Mullennex, supra,* the Supreme Court held that the jurisdiction of the district court with respect to the amount of the controversy is tested by examination of the *ad damnum* clause in the complaint or counterclaim. In *Draper* the court disregarded a request for attorneys fees in determining the

---

[4] *See* n 2, *infra.*

jurisdictional amount and held that the district court had jurisdiction because there was nothing alleged in the complaint which conferred upon plaintiff the right to recover attorneys fees. We think it follows by analogy from *Draper* that, if there is nothing alleged in the counterclaim in the present case which confers upon Brood the right to recover the sums requested, then the counterclaim must be disregarded in determining the jurisdiction of the district court.

■ The counterclaim alleges that the cause of action contained therein is based on an abuse of process. If the counterclaim was amended it might attempt to state a cause of action for (1) malicious prosecution, (2) wrongfully initiating a civil suit or (3) for abuse of process. In *Alvarez v. Retail Credit Ass'n,* 234 Or 255, 381 P2d 499 (1963), the Supreme Court discussed the situations in which the bringing of a civil action gives rise to a malicious prosecution case and held that the wrongfully prosecuted civil action must terminate in plaintiff's favor. Because defendant's counterclaim does not allege a termination of the civil suit in his favor, his counterclaim does not state a cause of action for malicious prosecution. It would be inconsistent with the facts alleged in the counterclaim to say that the civil suit alleged had terminated in defendant's favor.

■ In *Kelly v. McBarron,* 258 Or 149, 482 P2d 187 (1971), the Supreme Court, in discussing the wrongful filing of liens, indicated that the civil counterpart of malicious prosecution is called the wrongful initiation of a civil suit. In discussing the wrongful initiating of a civil suit, Prosser states:

> "Ordinarily the plaintiff must prove the termination of the former proceeding in his favor. But there are necessary exceptions where, as in the case of putting a man under bond to keep the peace, the proceeding is an ex parte one and relief is granted without an opportunity for the party against whom it is sought to be heard. This is true also as to proceedings ancillary to a civil suit, such as attachment or

[592]

arrest under civil process, as to which, if they are themselves unjustified, it is unnecessary to show a favorable termination of the main action. It usually is held, however, with a little authority to the contrary, that if an opportunity has been given to contest the facts the plaintiff must show a favorable termination of the ancillary proceeding itself." Prosser, Law of Torts, § 120 (4th ed 1971).

Here petitioner cannot state a cause of action based on the wrongful initiation of a civil suit because the lawsuit did not terminate in his favor and none of the exceptions is present.

With respect to the last of the three possible causes of action—abuse of process—the Supreme Court in *Larsen v. Credit Bureau,* 279 Or 405, 408, 568 P2d 657 (1977), stated:

"Abuse of process is the 'perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause.' *Kelly v. McBarron,* 258 Or 149, 154, 482 P2d 187 (1971). Dean Prosser has identified the essential elements of the tort as follows:

" ' * * * [F]irst, an ulterior purpose, and second, a wilful action in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. *The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club * * *.'* Prosser, Law of Torts, 857, § 121 (1971)." (Emphasis supplied.)

■ One of the counts of the action brought against petitioner was for replevin. Petitioner contends that "replevin" was never intended to be used against a person not in the possession of the property claimed

[593]

and it was an abuse of process for UF to file a replevin action when they knew he was not in possession of any merchandise owned by it. We disagree, at least under the facts of this case. Petitioner here did not suffer either an actual arrest or a seizure of property. Thus a cause of action for "abuse of process" was not available. *See Holiday Magic, Inc. v. Scott,* 282 NE2d 452, 455, 457 (Ill 1972).

Based upon the foregoing analysis, we agree with the circuit court that no cause of action can be stated in the counterclaim and the filing of it therefore did not deprive the district court of jurisdiction.

Defendant also assigns as error the circuit court's permitting the respondent district court judge to be represented by private counsel.[5] The procedure is not authorized by state law. ORS 180.220(2)[6] provides that the Attorney General shall represent state officers. A district court judge is a state officer. We think, however, that whether or not the counsel appearing for the district judge was authorized to do so by statute is immaterial because it is not a matter of concern to this litigant, *qua* litigant, who represents his opponent and because, on the merits, the circuit court's disposition of the writ was correct.[7] The judgment of the circuit court dismissing the writ is affirmed.

[5] *See* n 3, *infra.*

[6] ORS 180.220(2) provides:

"No state officer, board, commission, or the head of a department or institution of the state shall employ or be represented by any other counsel or attorney at law."

[7] We wish to note, however, our general approval of having counsel who represent the real parties in interest appear in writ of review proceedings. Although denominated the respondent in such cases, a district judge has no stake in the outcome. The party benefitted by his ruling is the party who does have a stake in the outcome and who should therefore bear the cost of defending the judge's decision. While we are not privy to what occurred in this particular case, this court can take note of its own internal procedures, as well as those of the Supreme Court. We know that the customary procedure, whenever a state judicial officer is sued, in a case such as this, is to tender the defense of the judicial officer to the Attorney General. The Attorney General, if he determines that the actual controversy is between private parties, will decline to appear and leave to the victorious private party the decision of whether or not to defend the judge's action.